Hoover H. WRIGHT, Appellant,

v.

Eugene C. PAINE et al., Appellees.

Stewart L. UDALL, Secretary of the Interior, Appellant,

v.

Eugene C. PAINE et al., Appellees.

Nos. 15740, 15926.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 23, 1960.

Decided Feb. 23, 1961.

Mr. Marvin J. Sonosky, Washington, D. C., with whom Mr. John S. White was on the brief, for appellant in No. 15740.

Mr. Robert S. Griswold, Jr., Atty., Dept. of Justice, with whom Messrs. Roger P. Marquis and Ralph S. Boyd, Attys., Dept. of Justice, were on the brief, for appellant in No. 15926. Messrs. Robert S. Griswold, Jr., and Roger P. Marquis, Washington, D. C., also entered appearances for the Secretary of the Interior in No. 15740.

Mr. Thomas F. McKenna, Santa Fe, N. M., with whom Mr. James A. McKenna, Jr., Washington, D. C., was on the brief, for appellees. Messrs. Joseph A. Sommer, Santa Fe, N. M., and Vernon L. Wilkinson, Washington, D. C., also entered appearances for appellees.

Before MAGRUDER, Senior United States Circuit Judge for the First Circuit,* and BAZELON and WASHINGTON, Circuit Judges.

BAZELON, Circuit Judge.

Section 17 of the Mineral Leasing Act requires the Secretary of the Interior to issue a non-competitive oil and gas lease to "the person first making application * * *." [1] In this suit for declaratory judgment, our appellees, Paine and his assignees, allege that Paine made the first application for such a lease of certain public lands in New Mexico and that the Secretary wrongfully rejected it on the ground that it was prematurely filed. The District Court, without opinion, granted appellees' motion for summary judgment and denied cross motions of our appellants, the Secretary and Wright, who had filed a later offer which was accepted by the Secretary. This appeal followed.[2]

The record shows that Paine filed his offer on March 31, 1953. The land had previously been subject to two oil and gas leases which, although due to expire on March 30, the preceding day, were relinquished by the lessees on March 26, 1953, four days prior to the expiration date.

At that time the Bureau of Land Management followed the practice of opening

---

* Sitting by designation pursuant to § 294 (d), Title 28, U.S.Code.

1. 41 Stat. 443 (1920), as amended, 30 U.S.C.A. § 226.

2. In an earlier suit by Paine against the Secretary on this claim, we vacated the judgment for Paine and remanded the case for the sole purpose of permitting Wright to intervene. Wright v. Seaton, Misc. 1403.

lands for leasing on the business day next succeeding the expiration of the previous lease.[3] Accordingly, the Bureau would have regarded Paine's offer as timely had no relinquishment been filed. The Secretary viewed the earlier leases, however, as *relinquished* rather than *expired*. Accordingly he applied the regulation which provides in pertinent part:

"Where a non-competitive oil and gas lease is cancelled or *relinquished* * * *, immediately upon the notation of the cancellation or *relinquishment* on the tract books of the land office * * * the lands shall be open to further oil and gas lease offers. [43 C.F.R. § 192.43 (1954), emphasis supplied.]"

The relinquishments of March 26 were not noted on the tract book at the Sante Fe land office until September 10, 1953. Appellant Wright filed his application for a lease of the same land on November 4, 1953, and the Secretary accepted it.

■ Appellees challenge the Secretary's interpretation, not the validity, of the regulation governing the procedures for leasing lands which have become available through relinquishment of a previous lease. His interpretation "becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." Bowles v. Seminole Rock & Sand Co., 1945, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700. The "courts can intervene only where legal rights are invaded or the law violated." Chapman v. Sheridan-Wyoming Coal Co., 1950, 338 U.S. 621, 631, 70 S.Ct. 392, 397, 94 L.Ed. 393.

■ Appellees contend that the regulation should not be construed to apply where, as here, a lease offer is filed prior to the notation of relinquishment on the tract book but after the date upon which the lease would have expired. Admittedly, the language of the regulation is not expressly exclusive. It does not say that land upon which a non-competitive lease is relinquished will be open to further leasing *only* upon notation of the relinquishment on the tract book. The long-standing practice, however, has been to reject lease offers filed prior to notation as premature.[4] This is consistent with the policy underlying the regulation of providing equal opportunity to all persons interested in obtaining leases. In Machris, Brown, 63 I.D. 161 (1956), the Secretary interpreted 43 C.F.R. § 192.43 to preclude the exception for which appellees contend. It may be, as they claim, that to except cases in which the prior lease has expired before notation would not be inconsistent with the practice and policy.[5] But it does not follow that the failure to afford such an exception is unreasonable.

We also reject appellees' argument that the Secretary's decision in 1956 in Machris, Brown introduced a new interpretation which should not be retroactively applied here. This decision overruled the ruling, first adopted by the Director of the Bureau of Land Management in 1955 in Machris, Brown,[6] that offers such as Paine's were properly filed because the prior lease would have expired. When Paine filed in 1953, he could not have relied on the Director's subsequent 1955 ruling. See Judge Frank's concurring

3. This was in accord with a regulation of the Secretary promulgated in 1943, 8 Fed.Reg. 7713, which provided that where a lease expired the lands became subject to lease on the succeeding business day. This section was dropped in 1946 when the oil and gas regulations were revised; however, the procedure there set forth has been continued as a matter of administrative practice. See discussion in Machris, Brown, 63 I.D. 161 (1956).

4. E. g., Machris, Brown, 63 I.D. 161 (1956); Joyce A. Cabot, 63 I.D. 122 (1956); Martin Judge, 49 L.D. 171 (1922).

5. We note that in 1957 the Secretary amended the regulation to provide for such an exception. 22 Fed.Reg. 6967. After a two-year period, however, this amendment was abandoned in favor of the former practice. 43 C.F.R. § 192.-43(a) (1960 Supp.).

6. Gower's Fed.Service BLM–1955–79.

opinion in Aero Spark Plug Co. v. B. G. Corp., 2 Cir., 1942, 130 F.2d 290, 297–298.

■ One further question remains. Appellees question the Secretary's decision that relinquishment of the prior leases occurred on March 26 under the applicable provisions of the Mineral Leasing Act. Under § 30 of the Act of 1920,[7] relinquishments terminated the lessees' obligation only upon acceptance by the Secretary. Section 30b, added in 1946 as part of general amendments to the Act,[8] provided, however, that relinquishments were to be effective as of the date of filing. Pursuant to a savings clause provision,[9] these amendments were not applicable to a pre-existing lease unless the lessee filed a statement electing to have his lease governed by the new provisions rather than the old.

Appellees contend that the prior leases antedated the 1946 amendments, and since the lessees did not file an election to be governed by those amendments, their leases were governed by the unamended statute and could not have been relinquished without the Secretary's acceptance. Under this view, the prior leases expired on March 30 and the lands were open for offers on the succeeding day.

We agree with the Secretary, however, that § 30b applied to these leases, and they were relinquished on March 26. The lands involved were originally included in a lease of over 2,500 acres issued in 1938. On November 8, 1951, the Bureau of Land Management approved assignments of two portions of this lease, effective as of the preceding March 31. These assignments, covering the land involved on this appeal and effecting a segregation and partition of the original 1938 lease, created two new leases in 1951.

It was only by virtue of the 1946 amendments that the segregating assignments were effective. Under the pre-1946 § 17 of the Act, the life of a non-competitive oil and gas lease was "for a period of five years and so long thereafter as oil or gas is produced in paying quantities * * *."[10] Section 30a, added in 1946,[11] provided that a segregating assignment of an unproductive portion of a lease extended past the initial five-year period because of production would continue as a separate lease for two years. The purpose of this amendment was to rectify the prior situation under which such an assignment would have resulted in the immediate termination of the assigned portion of the lease because there was no production to support its continued existence.[12] These leases, being creatures of the 1946 amendments, are of course governed by them.[13]

The judgment of the District Court is therefore reversed and the cause is remanded with directions to grant the appellants' motions for summary judgment.

So ordered.

---

7. 41 Stat. 449, 30 U.S.C.A. § 187.

8. 60 Stat. 956, 30 U.S.C.A. § 187b.

9. Section 15 of the Act of August 8, 1946, note following 30 U.S.C.A. § 181.

10. 41 Stat. 443 (1920), as amended, 49 Stat. 676 (1935).

11. 60 Stat. 955, as amended, 30 U.S.C.A. § 187a.

12. See S.Rep. No. 1392, 79th Cong., 2d Sess. 9 (1946).

13. When the segregating assignments of non-productive portions of the lease occurred in 1951, the original 1938 lease had been extended because another portion had been brought into production and continued the life of the entire lease. There had been assignments of interests in the original lease prior to 1946, but these were assignments of undivided interests and did not constitute a segregation of a portion of that lease.