Steve KOSANKE, et al., Appellants,

v.

**UNITED STATES DEPARTMENT OF THE INTERIOR, et al., Appellees.**

No. 97–5145.

United States Court of Appeals, District of Columbia Circuit.

Argued March 26, 1998.

Decided June 5, 1998.

Francis E. Froelich argued the cause for appellants, with whom Charles T. Carroll, Jr., was on the briefs.

Sean H. Donahue, Attorney, U.S. Department of Justice, argued the cause for federal appellees, with whom Lois J. Schiffer, Assistant Attorney General, and Edward J. Shawaker and Caroline M. Zander, Attorneys, were on the brief.

Before: EDWARDS, Chief Judge, TATEL, Circuit Judge and BUCKLEY, Senior Circuit Judge.

EDWARDS, Chief Judge:

. Appellants are two individuals who allegedly staked mining claims on federal lands and two other individuals to whom they assigned an interest in these claims. The Department of the Interior's ("DOI") Bureau of Land Management ("BLM") declared Appellants' mining claims void *ab initio*, on the

grounds that the land in question had been closed to mining entries pursuant to two separate DOI actions segregating the land from the operation of mining law, both of which had been duly noted on the appropriate public land records. The Interior Board of Land Appeals affirmed this decision. Appellants appealed to the United States District Court for the District of Columbia, which granted the DOI's motion for summary judgment. This appeal followed.

We find that the parcels at issue were segregated from the operation of mining laws on June 17, 1994 as indicated by a notation entered on the appropriate public land records in accordance with the notation rule set forth at 43 C.F.R. § 2201.1–2(a), which governs the segregation of public lands pending a proposed land exchange. This notation remained in effect at the time Appellants attempted to enter their mining claims in November 1994 and January 1995. Such notation effectively bars mining claims—even if the underlying segregation was illegally or erroneously entered—until the notation is corrected or superceded on the public land records. Thus, we affirm the lower tribunals' decisions finding Appellants' mining claims null and void *ab initio* on the basis of the June 1994 notation, without reaching Appellants' claims that the underlying segregations were unlawful.

## I. BACKGROUND

### A. *Mining Law*

■ The General Mining Law of 1872 provides that "[e]xcept as otherwise provided, all valuable mineral deposits in lands belonging to the United States ... shall be free and open to exploration and purchase, and the lands on which they are found to occupation and purchase, by citizens of the United States ..." in accordance with specified procedures for filing mining claims. 30 U.S.C. §§ 22, 29 (1994); *see also Pathfinder Mines Corp. v. Hodel,* 811 F.2d 1288, 1291 (9th Cir.1987). However, any lands withdrawn from mineral entry are no longer considered to be within the public domain and therefore are not subject to the statutory rights enumerated in the General Mining Law. *See Oklahoma v. Texas,* 258 U.S. 574, 599–602, 42 S.Ct. 406, 66 L.Ed. 771 (1922); *Pathfinder Mines,* 811 F.2d at 1291.

The Federal Land Policy and Management Act of 1976 ("FLPMA"), as amended, 43 U.S.C. §§ 1701–1784 (1994), specifies conditions under which the Secretary of the Interior or an authorized delegate ("the Secretary") may withdraw or segregate lands from the operation of some or all of the public land laws, including mining laws. As relevant here, the Secretary may segregate public lands to preserve the *status quo* of a parcel of land pending a proposed land exchange. *See id.* § 1716. The FLPMA, as amended by the Federal Lands Exchange Facilitation Act of 1988, authorizes the Secretary to exchange public lands for other lands where the Secretary determines that such an exchange would serve the public interest, *see* 43 U.S.C. § 1716(a), to "temporarily segregate the Federal lands under consideration for exchange from appropriation under the mining laws ... for a period of not to exceed five years," *id.* § 1716(i)(1), and to promulgate regulations governing his implementation of this authority, *see id.* § 1716(f)(1). The regulations issued in accordance with this mandate are codified in C.F.R. Title 43, Part 2200 (1997). *See* 58 Fed.Reg. 60,904 (1993) (promulgating C.F.R. Title 43, Part 2200 regulations as final rules following notice and comment procedure).

These regulations, in pertinent part, detail the procedures governing the commencement and termination of the segregative effect of a proposed land exchange authorized by 43 U.S.C. § 1716:

> (a) If a proposal is made to exchange Federal lands, the authorized officer may direct the appropriate State Office of the Bureau of Land Management to segregate the Federal lands *by a notation in the public land records.* Subject to valid existing rights, the Federal lands shall be segregated from appropriation under the public land laws and mineral laws for a period not to exceed 5 years from the date of the record notation.

43 C.F.R. § 2201.1–2(a) (emphasis added).

### B. *Procedural History*

On February 26, 1992, the Secretary, acting under 43 C.F.R. §§ 2310.1, 2310.2(a) (providing for segregation of lands from min-

ing laws pending congressional action withdrawing the lands for military purposes), signed Public Land Order No. 6924, segregating approximately 135,000 acres of land located in the southern portion of the Chocolate Mountain Aerial Gunnery Range in Imperial County, California, from the operation of federal mining law for a period of five years or until the segregation was lifted. *See* 57 Fed.Reg. 6,560 (1992). The purpose of this segregation was to preserve the *status quo* of the land pending congressional action on a DOI request to permanently reserve the land for military use. *Id.* This segregation was duly noted in the appropriate public land records. *See Kosanke*, IBLA 95–438 (Dec. 7, 1995) ("IBLA Decision"), *reprinted in* Joint Appendix ("J.A.") 3.

On June 17, 1994, the California State Office of the BLM, acting under 43 U.S.C. § 1716(i) (authorizing segregation of lands pending a proposed land exchange), segregated a portion of the lands included in the February 1992 segregation in order to maintain the *status quo* of the land pending a possible exchange of lands with a private party by noting the segregation of these lands on the appropriate public land records pursuant to 43 C.F.R. § 2201.1–2(a). The June 1994 segregation included the north-half section of section 5 and the north-half section of section 6 of the Township 13 South, Range 19 East, San Bernandino Meridian, Imperial County, California. *See* Memorandum from BLM Area Manager to BLM State Director for California (June 15, 1994), J.A. 143.

On October 31, 1994, Congress passed the California Military Lands Withdrawal and Overflights Act of 1994, Pub.L. No. 103–433, § 803(b), 108 Stat. 4502 (1994), withdrawing the lands segregated by the February 1992 order, except for the parcels included in the June 1994 segregation. *See* Appellees' Br. 6 (it is undisputed that the parcels at issue in this case were not part of the lands withdrawn by the Act).

On November 1, 1994, Appellants Steve and Mary Lou Kosanke entered onto the same two parcels of land included in the June 1994 segregation and purportedly located 34 lode mining claims and 16 placer mining claims. They filed notices of location pertaining to these claims with the California State Office of the BLM on November 23, 1994 and January 27, 1995. *See, Kosanke*, CAMC 264550 *et al.* (Mar. 20, 1995) ("BLM Decision"), J.A. 63. When Appellants filed these claims, notations pertaining to both the February 1992 and the June 1994 segregations remained in the relevant public land records; nothing in the records indicated that they had been canceled, superceded, or otherwise nullified. *See* IBLA Decision, J.A. 3.

Subsequently, on March 20, 1995, the California State Office of the BLM issued a decision declaring these mining claims null and void *ab initio*. *See* BLM Decision, J.A. 63–65. The BLM found that the subject lands had been validly removed from operation of mining law on February 26, 1992 and June 17, 1994 and that these segregations remained in effect at the time Appellants attempted to locate and file their mining claims. Therefore, the BLM concluded, Appellants' claims were without legal effect. *Id.* at 63–64. In upholding the validity of the June 1994 segregation, the BLM noted that the parcels at issue were withdrawn for a proposed land exchange and that the segregation of the parcels from the operation of mining law pending the proposed exchange was duly noted on the relevant land records pursuant to the notation rule set forth in 43 C.F.R. § 2201.1–2. *Id.* at 64.

Appellants appealed the BLM's decision to the Interior Board of Land Appeals ("IBLA"), arguing that both the February 1992 and June 1994 segregations were invalid and thus that their respective notations in the land records were without any legal effect. The IBLA rejected Appellants' claims and affirmed the BLM's decision. *See* IBLA Decision, J.A. 2–4. In its decision, the IBLA stated that it was immaterial whether the underlying segregations were posted illegally or in error. *See id.* at 3. Rather, the IBLA determined that, "the decisive issue before this Board is whether BLM's records indicated that the lands were open to the location of mining claims on the particular day when the claims were located." *Id.* (citation omitted). Since the two segregation notations appeared in the public land records and these records did not include any notation nullifying the

segregations, the IBLA concluded that, pursuant to the notation rule, 'these notations worked to remove the subject lands from mineral entry. *Id.* The IBLA held that, "[e]ven if a withdrawal is effected or perpetuated in error, the notation rule precludes a mining claimant from locating a claim until the land office records are corrected." *See id.* (citations omitted).

The Kosankes then transferred part of their interests in the mining claims to the other two Appellants and together they brought suit in the United States District Court for the District of Columbia for review under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706 (1994), seeking a declaration that the February 1992 and June 1994 segregations were illegal and that the DOI's application of the notation rule to their claims violated the APA. The District Court granted summary judgment in favor of the DOI. *See Kosanke v. United States Dep't of the Interior,* Civ. No.96–369 (D.D.C. Sept. 3, 1997). This appeal followed.

## II. Analysis

### A. *Standard of Review*

■ This court reviews the disputed agency action *de novo. See Dr Pepper/Seven–Up Cos. v. FTC,* 991 F.2d 859, 862 (D.C.Cir.1993) ("Where the decision under review is the legal sufficiency of an agency's action in light of the record, … [w]e proceed as if the [agency's] decision had been appealed to this court directly;" the district court's decision is not entitled to any particular deference.) (internal quotation marks and citations omitted). Judicial review of the BLM and IBLA decisions is governed by the APA, which directs the court to "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1994).

■ This court's review of agencies' interpretations of their own rules is deferential; an agency's interpretation of its own regulation is "controlling unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins,* 519 U.S. 452, 117 S.Ct. 905, 911, 137 L.Ed.2d 79 (1997) (citation and internal quotation marks omitted); *Consolidated Rail*

*Corp. v. ICC,* 43 F.3d 1528, 1532 (D.C.Cir. 1995).

### B. *Merits*

■ Appellants challenge the validity of the February 1992 and June 1994 segregations on various grounds. We affirm the IBLA's conclusion that the notation recording the June 1994 segregation in the relevant BLM records served to remove the subject lands from mineral entry, even if the underlying withdrawal of the land was effected or perpetuated in error. Therefore, we need not reach the question of whether the withdrawal underlying the June 1994 notation was valid. Furthermore, since we find that Appellants' mining claims are null and void due to the June 1994 notation, we need not address the validity or effect of the February 1992 segregation or the notation pertaining to it.

As explained above, the statutory scheme enacted by the FLPMA, as amended, and its implementing regulations clearly specify actions which trigger the segregation and reopening of lands from the operation of mining laws. The regulations applicable to the June 1994 segregation pending a proposed land exchange specify that segregation commences with a notation in the land records, *see* 43 C.F.R.§ 2201.1–2(a), and terminates five years from the notation date, or when a decision not to proceed with the exchange is published in the Federal Register, or when the land is conveyed in accordance with an exchange agreement, *see id.*§ 2201.1–2(c). Thus, the June 1994 notation, implemented in accordance with section 2201.1–2, operated to segregate the lands in question from the operation of mining laws until June 1999 or until the notation was otherwise nullified.

The IBLA looked to administrative and judicial interpretations of similar notation rules to determine the effect of a notation made pursuant to section 2201.1–2(a). Although the IBLA's decision and the cases cited therein make reference to the DOI's historic reliance on notation rules, it is clear that the BLM decision which it affirmed in this case actually relied on the BLM's compliance with the specific notation rule set forth in 43 C.F.R. § 2201.1–2(a). *See* BLM

Decision, J.A. 64 (citing § 2201.1–2(a)); *see also* Memorandum from BLM Area Manager to BLM State Director for California (June 15, 1994), J.A. 143 (ordering segregation of subject lands pending proposed land exchange pursuant to § 2201.1–2). This rule was promulgated through an appropriate rulemaking procedure. *See* 56 Fed.Reg. 49,-962, 49,972 (1991) (publication of proposed rule providing for 60–day comment period); 58 Fed.Reg. 60,904, 60,921 (1993) (publication of final rule). Thus, we need not consider whether the DOI relied only on a generalized notation rule promulgated through adjudication rather than rulemaking and, if so, whether this would have affected the efficacy of the June 1994 notation. Appellants contentions on this point are misplaced.

Appellants argue further that, even if the notation would be lawful if based on a valid segregation, a notation on land records should not serve as an effective bar on mining entries if the underlying segregation is invalid. Thus, Appellants ask us to reach the question of whether the underlying February 1992 and June 1994 withdrawals were lawful and, if we find them to be unlawful, to disregard the respective notations in the land records and recognize Appellants' November 1994 and January 1995 claims as valid.

Even assuming, for the sake of argument, that the withdrawal underlying the June 1994 notation was unlawful, we decline to recognize Appellants' mining claims filed prior to *public* correction of the June 1994 notation. The courts, as well as the DOI, have consistently upheld notation rules similar to that in 43 C.F.R. § 2201.1–2(a) as barring mining entries until the notation is either corrected or superceded—even if the underlying segregation was erroneous or otherwise unlawful—for the sake of fairness to the general public. *See, e.g., Wright v. Paine,* 289 F.2d 766, 768 (D.C.Cir.1961); *Shiny Rock Mining Corp. v. United States,* 825 F.2d 216, 219 (9th Cir.1987) (the purpose of such notation rules is to prevent confusion and conflict of claims) and cases cited therein; *B.J. Toohey,* 88 I.B.L.A. 66, 78–82, 92 Interior Dec. 317, 324–26 (1985) (explaining equal protection basis for notation rules) and cases cited therein. Under this reasoning, the proper course of action for claimants such as Appellants is to challenge the underlying segregation in or-

der to have the alleged error corrected. Once any error has been corrected, the land will be reopened in accordance with applicable regulations. Only then can the challenger enter his mining claims. As this court held in *Wright,* interpreting notation rules in this way is "consistent with the policy ... of providing equal opportunity to all persons interested in obtaining [interests in the land]." 289 F.2d at 768.

Because we hold that the June 1994 notation effectively segregated the lands at issue from the operation of the mining laws at the time Appellants located and filed their mining claims regardless of the validity of the underlying withdrawal, we need not reach the question of whether the withdrawal underlying the June 1994 notation was valid. Furthermore, since we find that Appellants' mining claims are null and void due to the June 1994 notation, we need not address the validity or effect of the February 1992 segregation or the notation pertaining to it.

### III. CONCLUSION

For the reasons explained above, the District Court's order granting the DOI's motion for summary judgment is affirmed.

*So ordered.*