Michael G. MARINANGELI, Plaintiff,

v.

Bruce A. LEHMAN, Commissioner
of Patents and Trademarks,
Defendant.

No. CIV.A. 97–2556 (JHG).

United States District Court,
District of Columbia.

Oct. 28, 1998.

Michael G. Marinangeli, New York City, pro se.

Diane Marie Sullivan, U.S. Attorney's Office, Washington, DC, Albin F. Drost, Nancy C. Slutter, Patent & Trademark Office, Nancy J. Linck, David Jackson Ball, Jr., U.S. Patent & Trademark Office, Arlington, VA, for Bruce Lehman, Commission of Patents & Trademarks, U.S. Patent & Trademark Office, Department of Commerce, Defendant.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Plaintiff, Michael G. Marinangeli ("Marinangeli"), commenced this action *pro se* against defendant, Bruce A. Lehman, Commissioner of Patents and Trademarks ("Commissioner").[1] Marinangeli, an attorney, alleges his suspension from practice before the Patent and Trademark Office ("PTO") violates the Administrative Procedure Act ("APA"), and various provisions of the United States Constitution. Presently pending before the Court are the parties' cross-motions for summary judgment.[2] Upon consid-

eration of the entire record in this matter, and for the reasons discussed below, the Commissioner's motion for summary judgment is granted and Marinangeli's motion is denied.

### I. Background

Marinangeli is a lawyer who, in or about 1984, was admitted to practice before the PTO and in the states of New York and New Jersey. In 1992, Marinangeli pleaded guilty to felony theft of mail matter (credit cards and bank checks) in violation of 18 U.S.C. § 1708. He was subsequently sentenced in the United States District Court for the Southern District of New York to three years probation and restitution.

As a result of his criminal conviction, Marinangeli was brought before the New York Supreme Court on attorney disciplinary charges. Marinangeli argued in mitigation during his hearing that he was previously addicted to alcohol and crack cocaine, that the crimes were the result of the addiction, and that he was currently in recovery. *See In re Marinangeli*, 211 A.D.2d 272, 273, 628 N.Y.S.2d 79 (N.Y.App.Div.1995). The New York court considered Marinangeli's evidence in mitigation, but nonetheless imposed a 2.5 year suspension from practicing law in New York because the addiction did not "excuse [Marinangeli's] actions." *Id.* Marinangeli was also suspended for three years from the New Jersey bar. *See In re Marinangeli*, 142 N.J. 487, 665 A.2d 385 (N.J. 1995).

On April 19, 1993, Marinangeli responded to a routine PTO survey of registered patent attorneys and advised that he had pleaded guilty to mail theft. On May 5, Steve Morrison, an investigator for the PTO Office of Enrollment and Discipline ("OED"), wrote to Marinangeli asking for more information.[3] A

1. Marinangeli also names as defendants in the Complaint various Commerce Department officials, Attorney General Janet Reno and the United States Attorney, all in their "official capacities." *Complaint* at 5. He asserts no basis for joinder of these individuals and the Court can find none. Local Rule 213, in accordance with 35 U.S.C. § 32, states a person suspended from practice before the Patent and Trademark Office may commence an action only against the Commissioner of Patents. As a result, the Court will dismiss the action as to these other parties on the

grounds of misjoinder pursuant to Fed.R.Civ.P. 21.

2. Marinangeli filed what he termed a dispositive motion. The Court considers it to be a summary judgment motion.

3. The record indicates that Morrison included in the May 5 correspondence a release to be signed by Marinangeli authorizing OED to obtain relevant records and documentation from "every

flurry of correspondence then ensued over the next few months with Marinangeli providing Morrison with relevant documentation concerning his addiction, the prosecution in New York, and the disciplinary actions by the New York and New Jersey bars. On January 25, 1994, Morrison advised Marinangeli that because he was suspended from the New York and New Jersey bars he could no longer practice before the PTO in trademark cases.[4] Marinangeli was able to continue practicing before the PTO as a patent agent, however, because he did not need bar membership to do so.[5] As a result, Marinangeli ceased his trademark practice in January 1994 but continued to appear before the PTO as a patent agent until July 1996. *See* Plaintiff's Dispositive Motion at 9.

A disciplinary complaint was filed by the PTO against Marinangeli on March 10, 1995. The Complaint alleged Marinangeli's felony theft conviction constituted a crime of moral turpitude in violation of 37 C.F.R. § 10.23(c)(1) and § 10.23(b)(3).[6] A hearing was conducted before an administrative law judge approximately three months after the complaint was filed. The PTO produced written evidence and called no witnesses and Marinangeli produced written evidence and called one witness, his sister, who is an addiction counselor. *See* Administrative Record at A000338, A000361. The administrative law judge issued an initial decision on July 19, 1995 suspending Marinangeli from practice before the PTO for two years. The judge found that Marinangeli had violated the PTO disciplinary rules by committing a crime involving moral turpitude, that felony theft of mail matter is serious, that disciplining Marinangeli would deter other practitioners from committing crimes, that suspension solely from the state bar would not deter practitioners from committing wrongdoing before the PTO, that suspension was necessary to protect the public interest and the integrity of the profession, and that Marinangeli's alcohol and drug abuse did not excuse his conduct. *See* Administrative Record at A000935–944. The administrative law judge found compelling the fact that Marinangeli failed to return the release from and that he continued to practice trademark law after Morrison told him to stop.[7]

Marinangeli filed a timely appeal to the Commissioner pursuant to 37 C.F.R. § 10.155(a) and did not request an oral hearing at that time. *See* Administrative Record at A000945–961. On April 24, 1997, twenty months after the appeal had been filed, the Commissioner, based on a review of the record, issued a final decision adopting the two-year suspension for essentially the same reasons stated in the initial decision. At this point, Marinangeli had already been reinstated to the bar in New York on August 8, 1996.[8] Marinangeli, claiming the Commissioner's final decision violated the Double Jeopardy and Equal Protection Clauses of the United States Constitution, as well as the equitable principles of laches, estoppel and acquiescence, sought reconsideration of the final decision pursuant to 37 C.F.R.

agency of government, bar association, medical doctor, probation officer," etc. Administrative Record at 000128. The Commissioner found that Marinangeli failed to sign and return the release. *See* Administrative Record at A001146. Marinangeli claims he has no knowledge of the release. *See* Plaintiff's Reply to Cross Motion at 3.

4. *See* 37 C.F.R. § 10.14(b), which states "[i]ndividuals who are not attorneys are not recognized to practice before the [PTO] in trademark and other non-patent cases." Attorney is defined in 37 C.F.R. § 10.1(c) as "an individual who is a member in good standing of the bar of any United States court or the highest court of any State."

5. *See* 37 C.F.R. § 10.6(b), which states "[a]ny citizen of the United States who is not an attorney ... may be registered as a patent agent to practice before the [PTO]."

6. 37 C.F.R. § 10.23(b)(1) prohibits a practitioner from "engag[ing] in illegal conduct involving moral turpitude." 37 C.F.R. § 10.34(c)(1) states "[c]onviction of a criminal offense involving moral turpitude, dishonesty, or breach of trust" is a violation of § 10.23(b)(1).

7. The Commissioner rejected, on the basis of insufficient evidence, the administrative law judge's finding that Marinangeli continued to practice trademark law after Morrison told him to stop. *See* Administrative Record at A001143.

8. It appears Marinangeli has not sought reinstatement to the New Jersey bar.

§ 10.156(c) and requested an oral hearing. On September 5, 1997, the Commissioner denied Marinangeli's request for an oral hearing, and issued a decision denying reconsideration. The Commissioner held Marinangeli's suspension did not violate the Equal Protection or Double Jeopardy Clauses of the United States Constitution and the equitable doctrines of laches, estoppel and acquiescence did not prohibit the two-year suspension. *See* Administrative Record at A001310–1316. The Commissioner's decision on reconsideration advised Marinangeli he had a right to seek judicial review on the record in the United States District Court for the District of Columbia. Marinangeli then initiated this action.

## II. *Discussion*

Plaintiff makes a number of statutory, constitutional, and equitable challenges to the Commissioner's final decision. Each are addressed below.

### I. *Administrative Procedure Act Claim.*

■ Marinangeli claims "the Commissioner did not articulate a satisfactory explanation for his decision other than citing rules and did not consider relevant mitigating factors or whether there was a clear error in judgment." Plaintiff's Dispositive Motion at 14. Marinangeli does not challenge the Commissioner's finding that he violated disciplinary rule 37 C.F.R. § 10.23(b)(3), which states "[a] practitioner shall not . . . [e]ngage in illegal conduct involving moral turpitude." [9] Rather, he challenges the two-year suspension recommended by the administrative law judge and adopted by the Commissioner. *See* Administrative Record at A001140–41.

■ The Commissioner "may, after notice and opportunity for a hearing, suspend or exclude . . . from further practice before the [PTO], any . . . attorney" shown to be guilty of certain misconduct. 35 U.S.C. § 32. Ju-

dicial review of the Commissioner's final decision imposing sanctions is available in this Court. 35 U.S.C. § 32; Local Rule 213.[10] Such review is governed by the APA, which permits reviewing courts to set aside agency decisions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. "In applying [the arbitrary and capricious] standard, the focal point for judicial review should be the administrative record already in existence." *Camp v. Pitts*, 411 U.S. 138, 141, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); *see also Friedman v. Lehman*, 1996 WL 652768, 1996 U.S. LEXIS 12723, 40 U.S.P.Q.2d 1206 (D.D.C.1996) (stating that sanctions imposed by the Commissioner are reviewed under an arbitrary and capricious standard based on an existing administrative record). Thus, this Court must determine upon review of the entire administrative record whether the Commissioner's adoption of the two-year suspension was arbitrary and capricious or an abuse of discretion.

The Code of Federal Regulations requires the administrative law judge to explain the reason for any disciplinary penalty or reprimand. *See* 37 C.F.R. § 10.154(b). In determining the penalty to be assessed, the judge "should normally . . . consider:" (1) the public interest, (2) the seriousness of the violation, (3) the deterrent effects, (4) the integrity of the legal profession, and (5) any extenuating circumstances. *See* 37 C.F.R. § 10.154(b). The Commissioner must review the penalty based on the record made before the administrative law judge. *See* 37 C.F.R. § 10.155. Both the administrative law judge and the Commissioner considered the applicable factors when arriving at their conclusions.

The factors of public interest, integrity and deterrence are interrelated. The Commissioner noted that PTO attorneys have "enormous power" over their client's intellectual property rights and the "public relies on the

---

9. The Commissioner concluded Marinangeli's theft conviction constituted a crime of moral turpitude. *See* Administrative Record at A001140; *see also Chiaramonte v. INS*, 626 F.2d 1093, 1097 (2d Cir.1980) (citing cases) ("It has been long acknowledged by this Court and every other circuit that has addressed the issue that crimes of theft, however they may be technically

translated into domestic penal provisions, are presumed to involve moral turpitude.").

10. Local Rule 213 states the "record and proceedings before the Patent Office . . . shall constitute the sole basis for the Court's review."

disciplinary process to ensure that practitioners act with integrity and in compliance with the rules." Administrative Record at A001141. Marinangeli claims there is no public interest to protect because when he was punished by the New York and New Jersey bars he was unable to practice in trademark cases before the PTO. *See* Plaintiff's Answer to Defendant's Cross–Motion at 7. The Commissioner considered and rejected Marinangeli's arguments. He found that although Marinangeli could not appear on trademark cases, the state disciplinary action had little effect on Marinangeli's patent practice because Marinangeli continued to represent clients as a patent agent under 37 C.F.R. § 10.10(a). *See* Administrative Record at A001143, n. 6.

The PTO is not bound by the disciplinary sanctions imposed by New York and New Jersey. Even though Marinangeli has already been disciplined in other states, he may still be disciplined by the PTO, or any other court or agency before whom he is admitted to practice. *See In re Ruffalo*, 390 U.S. 544, 546, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968) (a state disbarment order is not "conclusively binding on the federal courts."); *Koden v. United States Dep't of Justice*, 564 F.2d 228, 232 (7th Cir.1977) ("It is elementary that any court or administrative agency which has the power to admit attorneys to practice has the authority to disbar or discipline attorneys for unprofessional conduct."). Thus, the Commissioner's finding that the public interest and the integrity of practice before the PTO is best served by a discipline separate and apart from that imposed by New York is not arbitrary, capricious or an abuse of discretion.

The Commissioner also considered Marinangeli's mitigation arguments. Although Marinangeli claims the Commissioner ignored all of the evidence he presented concerning his disease and the effect it had on his actions, the Commissioner stated he *carefully* considered Marinangeli's arguments. *See* Administrative Record at A001144. The Commissioner concluded, however, that Marinangeli's addiction did not excuse or reduce the seriousness of his crime. *See* Administrative Record at A001145. It was not arbitrary and capricious or an abuse of discretion for the Commissioner to find the evidence in mitigation did not outweigh the seriousness of the crime. In fact, many states have considered and rejected alcoholism as warranting a reduction in disciplinary sanctions. *See e.g., Florida Bar v. Davis*, 657 So.2d 1135, 1137 (Fla.1995) (seriousness of crime of accepting bribes by a judicial officer outweighs mitigation of alcoholism); *Ridge v. State Bar of California*, 47 Cal.3d 952, 254 Cal.Rptr. 803, 766 P.2d 569, 573 (Cal.1989) (mishandling of trust account funds warrants discipline "notwithstanding petitioner's alcoholism"); *In Re Hopmayer*, 625 A.2d 290, 292 (D.C.1993) (attorney must be disbarred for crimes involving moral turpitude "regardless of any mitigating factors such as alcoholism").

The Commissioner considered Marinangeli's failure to cooperate fully with the PTO as weighing in favor of suspension. The Commissioner found that Marinangeli failed to report his suspension until he was asked about it in a routine inquiry by the PTO. Although 37 C.F.R. § 10.131(b) requires a practitioner to report disciplinary violations to the PTO, it does not state when such incidents should be reported. Marinangeli committed the offenses in 1991, pleaded guilty in late 1992 and advised the PTO of his conviction in April 1993. The Commissioner found that Marinangeli did not inform "OED as soon as reasonably possible" about his crime. Administrative Record at A001146. The PTO's interpretation of what is reasonable under its regulations is not unreasonable. *See Kosanke v. United States Dep't of Interior*, 144 F.3d 873, 876 (D.C.Cir.1998) ("[A]n agency's interpretation of its own regulation is controlling unless plainly erroneous or inconsistent with the regulation.") (citation omitted). Thus, the Commissioner's finding that Marinangeli acted unreasonably under the PTO regulations will not be disturbed by this Court.

Moreover, the Commissioner deemed relevant to the issue of sanctions the fact that Marinangeli continued to practice trademark law despite being suspended from the New York and New Jersey bars. Marinangeli does not dispute he practiced trademark law

until Morrison told him to stop in January 1994. He states he was under the impression he could practice before the PTO until a final decision was issued by the New York bar. *See* Plaintiff's Response to Cross-Motion at 3. Even taking into consideration Marinangeli's claims that he was misinformed as to his ability to prosecute trademark cases, attorneys are expected to know and abide by disciplinary rules and the Commissioner's consideration of this factor was not arbitrary and capricious or an abuse of discretion.

The Commissioner also found that Marinangeli's failure to sign and return the release form authorizing the PTO to investigate "hampe[red] OED's ability to perform a timely and thorough investigation." *See* Administrative Record at A001146. Marinangeli claims he has "no idea, to this day, of never having signed and returned the authorization and release form." *See* Plaintiff's Reply to Cross-Motion at 3. The record shows on May 5, 1993, Morrison sent Marinangeli a letter enclosing the release. *See* Administrative Record at A00504-5. Marinangeli acknowledged receipt of the May 5 letter from Morrison, but said nothing about the release form. *See* Administrative Record at A000489 and A000485. The Commissioner's contrary finding was not an abuse of discretion in light of Marinangeli's failure to introduce, other than his own statement to the contrary, any testimony or evidence to rebut the PTO's contention Marinangeli received the release and failed to sign it.[11]

*II. Due Process Claim.*

 Marinangeli claims the procedure used by the PTO in adjudicating the disciplinary complaint violates the Due Process Clause of the United States Constitution. Specifically, he claims the failure of the PTO to call Morrison as a witness, the failure of the Commissioner and administrative law judge to consider Pia Marinangeli's testimony, and the denial by the Commissioner of an oral hearing all constitute due process viola-

tions. These claims are unavailing. As an initial matter, the Due Process Clause does not require a hearing on disbarment from a federal court when the conduct complained of was the subject of a state disciplinary hearing as long as the state hearing comported with due process. *See Selling v. Radford,* 243 U.S. 46, 50–51, 37 S.Ct. 377, 61 L.Ed. 585 (1917); *In re Thies,* 662 F.2d 771, 772 (D.C.Cir.1980). However, 37 C.F.R. § 10.144 provides for a hearing before the administrative law judge in PTO disciplinary matters and, as a result, Marinangeli was entitled to a hearing regardless of the New York action. Due process requires that the hearing be meaningful. *See Propert v. District of Columbia,* 948 F.2d 1327, 1331 (D.C.Cir.1991). Meaningfulness is "flexible and [varies] depending upon the circumstances of a given case." *Id.* at 1332.

 Marinangeli claims he was denied the opportunity to cross-examine Morrison. He states that because the PTO failed to call Morrison as a witness, he was prejudiced by "hearsay mischaracterizations of communications" between Morrison and Marinangeli. *See* Plaintiff's Dispositive Motion at 14. Marinangeli does not specify, however, what these mischaracterizations are. With the exception of a brief mention of Morrison's conversation with Marinangeli advising Marinangeli to stop practicing trademark law, the administrative law judge heard no testimony concerning conversations between Marinangeli and Morrison. *See* Administrative Record at A000350-51. Marinangeli's exhibits concerning his communications with Morrison were admitted into evidence and considered by both the administrative law judge and the Commissioner.

If Marinangeli wanted to call Morrison he could have done so. The PTO originally listed Morrison as a potential witness. *See* Administrative Record at A001480. Marinangeli did not list Morrison as a witness, but indicated he would conduct a cross-examination. *See* Administrative Record at

---

11. Nonetheless, in other respects, a review of the record reveals that Marinangeli did cooperate with the investigation and did provide Morrison with a list of the people who have talked with or treated him, including rehabilitation centers, pre- trial officers, probation officers, New York bar association programs, etc. and advised OED "to contact any of the[se] individuals to discuss my treatment and recovery under their supervision." *See* A000108.

**8**

A000288. At the hearing, however, the PTO attorney advised the administrative law judge "he decided not to call any witnesses because really they do not add anything that would help you in the case." Administrative Record at A000338. Cf. Advisory Committee Notes to the 1993 Revision of Fed.R.Civ.P. 26(a)(3) ("Listing a witness does not obligate the party to secure the attendance of the person at trial . . . ."). Marinangeli did not object at this point, nor did he indicate he desired to call Morrison as a witness. Marinangeli cannot now claim he was denied the opportunity to call Morrison as a witness because he waived his right to do so by not requesting Morrison's presence at the hearing.

■ Marinangeli also claims he was denied due process because "obviously neither the [administrative law judge] nor the Commissioner . . . fully read or understood" Marinangeli's expert witness testimony. Plaintiff's Response to Cross–Motion at 5. Marinangeli feels there was bias against his expert witness because the witness was his sister. Although the Commissioner noted that Pia Marinangeli was Marinangeli's sister, this fact alone does not show bias. Marinangeli himself introduced Ms. Marinangeli as his "sole witness, who happens to be my sole sister." Administrative Record at A000361. Pia Marinangeli, an addiction counselor, testified that Marinangeli was previously addicted to narcotics and alcohol, but has been successfully participating in a program of recovery. See Administrative Record at A000366. The Commissioner considered the expert testimony and concluded that Marinangeli's addiction and recovery does not support a reduction of the disciplinary sanction. See Administrative Record at A001146. There is no evidence whatsoever the Commissioner was biased against this witness or somehow discredited her testimony because of her relationship to Marinangeli.

■ Marinangeli's last due process argument is he was denied an oral hearing before the Commissioner. Marinangeli is not entitled to a second hearing. Due pro-

cess requires only that a hearing occur "at some meaningful time." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). As the Supreme Court has stated, "the demands of due process do not require a hearing, at the initial stage or at any particular point or at more than one point in an administrative proceeding so long as the requisite hearing is held before the final order becomes effective." Opp Cotton Mills, Inc. v. Administrator of Wage & Hour Div., 312 U.S. 126, 152–53, 61 S.Ct. 524, 85 L.Ed. 624 (1941). Marinangeli received a meaningful hearing. He was permitted to introduce exhibits, call witnesses, and testify before the administrative law judge. There is no evidence that the administrative law judge prohibited testimony or evidence or placed time restrictions upon Marinangeli. Moreover, while the PTO regulations require a hearing before an administrative law judge, see 37 C.F.R. § 10.144, they do not require one before the Commissioner. See 37 C.F.R. § 155(b) (appeal to the Commissioner is decided "on the record made before the administrative law judge"). Accordingly, Marinangeli was not entitled to a second hearing before the Commissioner and there is no due process violation.

### III. Double Jeopardy Claim.

■ Marinangeli claims that because he was already sanctioned by New York for his criminal conviction,[12] the Commissioner's disciplinary action represents a second jeopardy in violation of the Fifth Amendment to the United States He argues, without citation, that administrative disciplinary proceedings are "quasi-criminal" in nature and thus subject to the Double Jeopardy Clause. While there is some case law that indicates disciplinary proceedings may be "quasi-criminal" in nature, see In re Ruffalo, 390 U.S. at 551, 88 S.Ct. 1222; In re Thies, 662 F.2d at 772, it is clear that administrative proceedings are not subject to the Double Jeopardy Clause. See Hudson v. United States, 522 U.S. 93, 118 S.Ct. 488, 490, 139 L.Ed.2d 450 (1997) (administrative proceeding resulting

12. It is unclear whether Marinangeli is referring to the criminal sentencing or the disciplinary action in New York. However, the Court's analysis would apply in either situation.

in monetary sanctions and occupational disbarment was civil, not criminal, and thus presented no double jeopardy bar to a subsequent criminal prosecution for federal banking law violations); *Devine v. Goodstein*, 680 F.2d 243, 247 (D.C.Cir.1982) (double jeopardy clause does not apply to administrative investigation of complaint against immigration officer); *Klein v. Peterson*, 6 U.S.P.Q.2d 1556, 1557 (D.D.C.1988) (double jeopardy clause does not apply to Patent Commissioner's reconsideration of disciplinary order).[13] For the reasons stated, Marinangeli's double jeopardy claim fails.

*IV. Equal Protection Claims.*

■ Although unclear, Marinangeli appears to claim that because he is being sanctioned by the PTO while he is currently a member in good standing of the New York bar, he is being treated differently from all other attorneys in good standing who are permitted to practice before the PTO. Thus, according to Marinangeli, the PTO has violated his Fifth Amendment right to equal protection. This argument is unconvincing. Marinangeli is not claiming he is a member of a suspect class, or the PTO's action has affected a fundamental right. Thus, in order to prevail on an equal protection challenge, Marinangeli must show he is being treated differently from similarly situated persons. *See Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Brandon v. Dist. of Columbia Bd. of Parole*, 823 F.2d 644, 650 (D.C.Cir.1987). The class of persons to which Marinangeli must compare himself for equal protection analysis are those attorneys sanctioned by the PTO and not, as Marinangeli claims, all attorneys in good standing.

■ Marinangeli simply has not shown he has received a punishment that is disproportionate to the punishments received by other attorneys sanctioned by the PTO. The Commissioner has broad discretion to sanction attorneys admitted to practice before the PTO. *See* 35 U.S.C. § 32 ("The [Commission-

er] may ... suspend or exclude, either generally or in any particular case, from further practice before the PTO, any person, agent or attorney...."). The only limitation placed on this discretion is that petitions for reinstatement will be considered after expiration of the period of suspension, or five years, whichever is shorter. *See* 37 C.F.R. § 10.160(a) & (b). Marinangeli cites *Jaskiewicz v. Mossinghoff*, 822 F.2d 1053 (Fed. Cir.1987) and *Weiffenbach v. Lett*, 1101 O.G. 59 (Comm'r Pats.1989) as support for the proposition that he has been treated more unfairly than other patent practitioners disciplined by the PTO. In *Jaskiewicz*, the Court held there was insufficient evidence to find the petitioner had violated two of the three counts he was charged with and disciplined on. As a result, the Court remanded the case to the Commissioner to reconsider the two-year suspension in light of the one remaining count. Although the Court noted the PTO should consider the petitioner's age and exemplary record in mitigation, these factors were not the basis for the remand. Moreover, the *Jaskiewicz* court was not reviewing the sanction based on an abuse of discretion standard as the Court is here.

In *Lett*, the PTO reached an agreement with the petitioner wherein the petitioner would receive monitored and supervised probation for a period of five years. The Commissioner considered Marinangeli's reliance on *Lett* and ruled that Marinangeli's offense was more serious than Lett's offense and thus warranted greater penalties. *See* Administrative Record at A001147. The Commissioner's exercise of his discretion in sanctioning Marinangeli does not amount to an equal protection violation. *See United States v. Bell*, 506 F.2d 207, 221 (D.C.Cir.1974) (the fact that "different persons receive different treatment at the hand of Government does not, without more, demonstrate constitutional inequality"). This is especially so since there are numerous attorneys who received PTO sanctions harsher than that received by Marinangeli. *See, e.g., Klein v. Peterson*, 866 F.2d 412 (Fed.Cir.1989) (two-year suspension

---

13. Moreover, even if Marinangeli's administrative sanction were criminal in nature, double jeopardy does not bar successive state and federal prosecutions. *See United States v. Liddy*, 542 F.2d 76, 79 (D.C.Cir.1976) ("Successive prosecution in state and federal courts have long been held constitutionally permissible.").

plus five years probation for backdating eleven documents filed with the PTO); *Weiffenbach v. Crabtree,* No. DP87–1 (Comm'r Pat. 1987) (three-year suspension by PTO for income tax evasion); *Small v. Weinffenbach,* No. DP86–3,10 U.S.P.Q.2d (Comm'r Pat. 1989) (five-year suspension for backdating documents filed with the PTO).

### V. Equitable Doctrines of Laches, Acquiescence and Estoppel Claims

Marinangeli claims "the PTO's belated and duplicative attempt to again discipline Plaintiff at this late stage . . . of his re-integration into society, and his re-admission to the [New York bar] is clearly barred by the equitable doctrines of laches, acquiescence . . . and estoppel." Plaintiff's Dispositive Motion at 18.

None of these equitable doctrines, traditionally used as affirmative defenses, are appropriate in Marinangeli's case. Equitable estoppel, while available against a government agency, must be applied in a "rigid and sparing" manner. *See ATC Petroleum v. Sanders,* 860 F.2d 1104, 1111 (D.C.Cir.1988). "The case for estoppel against the government must be compelling, and will certainly include proof of . . . false representation, a purpose to invite action by the party to whom representation was made, ignorance of the true facts by that party . . . reliance . . . a showing of an injustice . . . and lack of undue damage to the public interest." *Id.* Marinangeli has made no argument that any of these elements apply to the agency's action here.

The doctrine of laches is designed to "promote diligence and prevent enforcement of stale claims." *Gull Airborne Instruments, Inc. v. Weinberger,* 694 F.2d 838, 843 (D.C.Cir.1982). Marinangeli would need to show the PTO delayed in bringing suit against Marinangeli and Marinangeli "changed his position in a manner that would not have occurred but for [the PTO's] delay." *Id.* at 844. Marinangeli has presented no such evidence. Marinangeli appears not to be alleging the PTO delayed in its actions, but that the PTO should not discipline him after he has already been disciplined and reinstated by the New York bar. The doctrine of laches is not the appropriate vehicle for advancing this complaint.

The last claim by Marinangeli is that the disciplinary action is barred by the doctrine of acquiesence. Marinangeli fails to explain how this doctrine is applicable to his case. In the trademark sense, acquiescence means there is some sort of implied consent to a certain action. *See TMT North America v. Magic Touch,* 124 F.3d 876, 885 (7th Cir.1997). "More generally, acquiescence is related to the doctrine of laches, by which 'equity comes to the aid of an innocent user and grants him refuge from a claimant who has calmly folded his hands and remained silent while the innocent user has exploited and strengthened his mark.'" *Id.* (quoting *Johanna Farms, Inc. v. Citrus Bowl, Inc.,* 468 F.Supp. 866, 881 (E.D.N.Y.1978)). Marinangeli has not demonstrated he is entitled to this equitable relief.

### III. Conclusion

For the reasons expressed above, it is hereby

ORDERED that plaintiff's motion for summary judgment, styled as plaintiff's dispositive motion, is denied; and it is

FURTHER ORDERED that defendant's motion for summary judgment is granted; and it is

FURTHER ORDERED that the Complaint is dismissed as to all other defendants.

IT IS SO ORDERED