NATIONAL LABOR RELATIONS
BOARD, Petitioner,
Cross-Respondent,

v.

PAN SCAPE CORPORATION,
Respondent, Cross-Petitioner.

Nos. 78–2451, 78–2581.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 19, 1979.

Decided Oct. 15, 1979.

Susan L. Dolin, NLRB, Washington, D.C., for petitioner.

Dean E. Richards, Indianapolis, Ind., for respondent.

Before PELL, SPRECHER and BAUER, Circuit Judges.

PELL, Circuit Judge.

In this case, the National Labor Relations Board (Board) has petitioned for enforcement, and Pan Scape Corporation (Pan Scape or the Company) has cross-petitioned for review, of a Board order that Pan Scape provide backpay to certain employees previously held to have been illegally discharged. The basis of Pan Scape's remonstration is that it did not receive a fair hearing before the Administrative Law Judge (ALJ) due to his denial of the Company's motions for a continuance and for disqualification.

This is the second time this litigation has come before this court. In the first, we enforced, by an unpublished order (7th Cir., 559 F.2d 1224), the Board's decision[1] that the Company had violated sections 8(a)(1) and (3)[2] of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (3), by discharging the employees of concern here, Richard D. Burton, David R. Jackson, and Robert E. Shreve. In its original order, the Board required that these employees receive backpay as compensation for their unlawful discharge. A controversy arose between the parties over the amount of the backpay due, however, and in an effort to resolve this controversy, the Regional Director of the Board issued, on December 14, 1977, and in accordance with § 102.52 of the

Board's Rules and Regulations, a Backpay Specification detailing the Board's position on the backpay amounts owed the employees. The Backpay Specification also included a notice of a hearing to be held on this issue in Indianapolis, Indiana, on March 6, 1977, at 10:00 a. m. and "consecutive days thereafter until concluded." On December 22, 1977, the Company filed its answer to the Board's Specification, objecting to the Board's computation as set forth below. Counsel for the General Counsel of the Board (General Counsel) moved, on February 8, 1978, to strike the Company's answer as not being sufficiently detailed or substantiated as required by section 102.54(b) of the Board's Rules and Regulations,[3] and moved that the Board's computation be deemed true and correct pursuant to § 102.-54(c).[4] This was where matters stood when the hearing was scheduled to begin on March 6, 1978, at 10:00 a. m.

Unfortunately, the hearing did not begin as scheduled because the ALJ was not present at 10:00 a. m. Exactly what delayed the ALJ has not been made entirely clear to this court, but both parties seem to concur that the tardiness was due to transportation problems and the ALJ was blameless. Regardless of the cause of the delay,

1. 224 NLRB No. 616.

2. Sections 8(a)(1) and (3), 29 U.S.C. §§ 158(a)(1) and (3) provide, in relevant part:
   (a) It shall be an unfair labor practice for an employer—
   (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
   (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization;

3. Section 102.54(b) provides:
   The respondent shall specifically admit, deny, or explain each and every allegation of the specification, unless the respondent is without knowledge, in which case the respondent shall so state, such statement operating as a denial. Denials shall fairly meet the substance of the allegations of the specification denied. When a respondent intends to deny only a part of an allegation, the respondent shall specify so much of it as is true and shall deny only the remainder. As to all matters within the knowledge of the respondent, in-

cluding but not limited to the various factors entering into the computation of gross back pay, a general denial shall not suffice. As to such matters, if the respondent disputes either the accuracy of the figures in the specification or the premises on which they are based, he shall specifically state the basis for the disagreement, setting forth in detail his position as to the applicable premises and furnishing the appropriate supporting figures.

4. Section 102.54(c) provides:
   If the respondent files an answer to the specification but fails to deny any allegation of the specification in the manner required by [subsection] (b) of this section, and the failure so to deny is not adequately explained, such allegation shall be deemed to be admitted to be true, and may be so found by the Board without the taking of evidence supporting such allegation, and the respondent shall be precluded from introducing any evidence controverting said allegation.

however, the parties informally agreed to postpone the hearing until 11:00 a. m. When the ALJ had not arrived by that time, the Company contingent left for lunch.

Exactly when the ALJ finally did put in an appearance also is not clear. The Board maintains he arrived about 12:30 p. m. The Company group, on the other hand, maintains that when they returned from lunch at approximately 1:00 p. m., they found the hearing room empty and assumed the ALJ had not yet arrived. They, therefore, left the building, leaving no message as to their destination or where they could be reached. The Company representatives and witnesses returned to Company headquarters in Muncie, about an hour's drive from Indianapolis. Where the Company's counsel went is not clear, but wherever it was, it apparently was not his office in Indianapolis and he appears to have become incommunicado for the remainder of the day.

Later that afternoon, the General Counsel attempted to reach the Company counsel by telephone to inform him of the arrival of the ALJ. Failing to reach him directly, the General Counsel stated on the record that he left an appropriate message with the Company attorney's secretary. The receipt of the message was denied by the Company's counsel on oral argument before this court. A call was also placed, however, to the Company's offices in Muncie, where it was learned that one of the Company's witnesses who had been present with the Company counsel that morning at the hearing room, vice-president Sutton, had returned to Company headquarters at Muncie. Because, as stated above, the Company's counsel could not be reached, neither call was acted upon and the hearing did not go forward on that day. At 4:05 p. m., however, the record was opened for the limited purpose of reciting the above listed events, and instructing the General Counsel to again telephone and telegraph the Company and its counsel that the hearing would resume with or without them at 9:30 a. m. on the following morning, March 7. The record was then closed for the day and the General Counsel made the directed phone calls and sent the appropriate telegrams.

At 9:35 on the morning of the 7th, the hearing was resumed without the presence of the Company or its counsel. The General Counsel stated for the record that he had telephoned the Company and its counsel and had left the above described messages. The message to the Company was left with vice-president Sutton. The hearing was once again recessed until 10:00 a. m., and telephone calls to the Company and its counsel were again made informing them that the hearing would proceed at that time. The Company and its counsel were told that if they intended to participate, the ALJ would accommodate them and would wait a reasonable amount of time for their arrival. Apparently as a result of these last phone calls, counsel for the Company appeared at 10:00 a. m. without witnesses or other Company representatives, and the hearing was resumed.

■ At the hearing, the ALJ partially granted the General Counsel's motion to strike the Company's Answer to the Board's Specification. The Company, in its answer, had contended (without providing substantiation) that the employees had greater interim income than computed by the Board, that the Board's choices of "representative" (comparative) employees were improper, that the backpay amounts should have been reduced by the amount of unemployment compensation paid to the employees, and that one or more of the employees had been offered reinstatement during the relevant period. The ALJ granted the motion to strike the objections regarding the representative employees for failure to comply with § 102.54(b), and properly granted the motion with regard to the unemployment compensation on the basis of *NLRB v. Gullet Gin Co.*, 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337 (1951). Discriminatees Jackson and Burton testified and were cross-examined by Company counsel, although apparently without conspicuous success, as to their interim earnings.

It was with regard to the alleged offers of reinstatement that we come to the basis

of the Company's arguments before this court. The Company's counsel requested that the ALJ grant a continuance until he could obtain the presence of two crucial witnesses: Hull, the president of the Company, and Sutton. When asked by the ALJ why he didn't have his witnesses available at that time, the Company counsel replied that Hull was in "teamster negotiations" but that Sutton ". . . I don't know could probably very well be here today, I don't know . . . I have talked to him. . . ." The ALJ denied the Company's motion, stating:

> This matter was noted for hearing yesterday and for consecutive days thereafter. Therefore, the absence from this hearing today is not because of any delay of mind yesterday, but a decision which has been made by Respondent.

Though the ALJ denied the continuance, he offered the Company's counsel the opportunity of telephoning Hull and seeing whether he could arrive at the hearing later that afternoon. The Company's counsel agreed to try, but stated he had unsuccessfully attempted to call Hull the night before, after receiving the telegram, and again that morning after receiving the General Counsel's phone call. After a short recess in the hearing, the Company counsel returned and stated he had been unable to reach Hull, but had talked to vice-president Sutton. Sutton had told the Company's counsel that he (Sutton) did not believe that the Company could get a fair hearing before this ALJ, and, therefore, would not be appearing. The Company's counsel then stated that no further evidence would be offered with regard to the alleged offers of reinstatement, and, in fact, the Company declined to participate further in the hearing. The hearing was therefore concluded with the Board's computation of backpay remaining intact.

In arguing before this court, the Company has basically preserved its arguments made to the ALJ and the Board: first, that the ALJ should have granted the motion for continuance; and second, that the ALJ should have disqualified himself for prejudice and bias. We will address each of these contentions in turn.

## A. The Continuance.

█ It is well established that the grant or denial of a continuance is within the discretion of the ALJ and will not be overturned absent a clear showing of abuse. *NLRB v. Interboro contractors, Inc.*, 432 F.2d 845, 860 (2d Cir. 1970), *cert. denied*, 402 U.S. 915, 91 S.Ct. 1375, 28 L.Ed.2d 661; *NLRB v. Standard Forge and Axle Co.*, 420 F.2d 508, 511–12 (5th Cir. 1969), *cert. denied*, 400 U.S. 903, 91 S.Ct. 140, 27 L.Ed.2d 140. Such an abuse shall be found only where the exercise of discretion "is demonstrated to clearly prejudice the appealing party." *Electromec Design and Development Co. v. NLRB*, 409 F.2d 631, 635 (9th Cir. 1969). Nevertheless, Pan Scape, citing *Standard Forge and Axle Co., supra*, contends that this court's primary responsibility is to determine the "reasonableness" of the exercise of the ALJ discretion. Pan Scape maintains that the ALJ's exercise in this case was unreasonable as it "precluded [Pan Scape] from presenting the crucial testimony of its two witnesses, the president and vice-president of the corporation." We disagree, and find the ALJ's exercise of his discretion within the boundaries of reason.

The record clearly supports the ALJ's and Board's determination that what "precluded" Pan Scape from presenting its witnesses was not the denial of the continuance by the ALJ, but the affirmative decision by Pan Scape not to participate. Pan Scape's argument that it did not receive adequate notice fails because the notice of the original March 6th hearing related that the hearing may continue after that date for "all consecutive days thereafter until completed." Pan Scape's assumption, without any foundation whatsoever on the record, that the hearing would last only one day, of course, fails to excuse its inability to be available on the 7th. Furthermore, the Company counsel's protestations that he did not receive notice that the hearing would go ahead on the 7th until that very morning are significantly undercut by his acknowledgements at the hearing that he "tried to

contact [Hull] last night after receiving the telegram," and that he ". . . got a telegram by telephone yesterday [the 6th] sometime late in the evening, right before I went home from the office. . . ."

The most obvious problem with Pan Scape's position that it could not get its witnesses to come to the hearing on time was, of course, its counsel's concession that "Bruce Sutton, I don't know could probably very well be here today . . .," and that even though its counsel was able to contact Sutton on the phone and tell him that no continuance would be granted, Sutton simply refused to participate. As for Hull, Pan Scape's second "crucial" witness, who, it was stated, was involved in "teamster negotiations," we need not long detain ourselves. In the absence of any rational explanation appearing on the record or given at oral argument as to why such negotiations were scheduled in light of the Board's notice of hearing, we find his absence also without reasonable excuse.

■ The record is clear that the ALJ, after finally arriving, made reasonable efforts to accommodate Pan Scape, repeatedly adjourning and delaying the hearing to allow additional phone calls, telegrams, etc. This is not a case, as was suggested in *Interboro, supra*, where there was "adduced at the hearing evidence which was crucial to the Company's case and which was unforeseen, that is, some information which Company counsel had no way of learning beforehand." 432 F.2d at 860. Rather, Pan Scape's counsel knew what evidence the General Counsel would present, and had full opportunity to cross-examine the witness-employees on their interim employment or offers of reinstatement. As in *Standard Forge and Axle Co., supra*, we do not feel the denial of the continuance here "hindered the cross-examination or preparation of Company counsel to any significant extent." 420 F.2d at 512. Any hindrance encountered by the Company's counsel was caused not by the ALJ, but by the Company's refusal to participate, its unwarranted assumptions, and its unexcused absences. In sum, we are unable to regard the ALJ's

actions as being subject to being characterized as parvanimity. We find, therefore, that the denial of the continuance was a reasonable exercise of the ALJ's discretion.

### B. The Motion to Disqualify.

■ The Company also argues that the ALJ committed error and abused his discretion in refusing to disqualify himself for reasons of bias and prejudice. Pan Scape claims that certain unnamed "events immediately prior to the administrative hearing caused the Judge to have a personal bias toward [*sic*] respondent and their [sic] position" and cite the ALJ's tardy arrival and refusal to grant the continuance as manifestations of this bias. The Company claims the ALJ's "refusal even to hear the opposing view" tainted the hearing with unfairness such that it was denied due process. We disagree.

As stated above, we think the record is clear that the ALJ made reasonable efforts to accommodate Pan Scape and repeatedly adjourned the hearing to attempt to secure the attendance of the Company's witnesses. These efforts were unsuccessful due to the failure of the Company and its counsel to leave any information as to where they could be reached after they left the hearing room on the 6th. The Company had notice the hearing may have been continued until the 7th, and any inability on its part to present evidence at that time was the result of its own decisions. We can ascribe no blame to the conduct of the ALJ here. The fact that the ALJ ruled adversely to Pan Scape on the motions to strike and for a continuance, and the delayed opening of the hearing are insufficient basis for any finding that the ALJ possessed any bias or prejudice. We find, therefore, that the exercise of the ALJ in denying the motion to disqualify to be well within the bounds of reason.

### C. The Backpay Order.

Because the Company has otherwise raised no questions or objections on this appeal regarding the merits of the Board's backpay computation and order, this computation shall remain as presently stated.

For the foregoing reasons, and being of the opinion that the conclusion of this proceeding has already been too long delayed, we enforce the Board's order.

Order Enforced.